# PATENT LICENSE AGREEMENT

This Patent License Agreement ("Agreement") is made by and between Griffen Security LLC (collectively, with its subsidiaries, affiliates and Representatives, the "Licensee"), and Bobbie Thompson, Markeith Boyd, and Shirley Lorraine Boyd who are the owners of U.S. Patent No. 7,319,378 (collectively the "Licensors"). The Licensee and the Licensors are also singularly referred to herein as a "Party" and collectively referred to herein as the "Parties."

## RECITALS

**WHEREAS**, Licensors have patented and collectively own all rights in U.S. Patent No. 7,319,378 (the "Licensed Patent");

**WHEREAS**, Licensee is in the business of security systems, and wishes to license the Licensed Patent to develop a product for sale in the United States;

**NOW, THEREFORE**, in consideration of the mutual covenants and promises contained herein, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, the Parties hereby agree as follows:

1. **Definitions**

    (a) "Effective Date" shall be the date of the last signature to this Agreement.

    (b) "Field of Use" shall mean vehicle security systems.

    (c) "Gross Profit" shall mean gross receipts on sales minus cost of manufacture of sales on all licensed products and an allowance to be made for returns and repairs.

    (d) "Licensed Products" shall mean any product within the Field of Use the manufacture, use, importation, offer for sale or sale of which would infringe a Valid Claim absent the license set forth in Section 2.

    (e) "Term" shall have the meaning set forth in Section 6(a).

    (f) "Valid Claim" shall mean (i) an issued and unexpired claim of the Licensed Patent that has not been held permanently revoked, unenforceable or invalid by a decision of a court or other governmental agency of competent jurisdiction, unappealable or unappealed within the time allowed for appeal, and which has not been admitted to be invalid or unenforceable through reissue or disclaimer or otherwise.

2. **License**

    (a) <u>License Grant to Licensee</u>. Subject to the terms and conditions of this Agreement, Licensors hereby grant to Licensee a U.S. exclusive, royalty-bearing license to make, have made, use, sell, offer for sale, or import Licensed Products in the Field of Use for the Term of this Agreement. Licensee shall have the right to sublicense to any third party any or all of the rights granted herein, and Licensee agrees to notify the Licensor of any or all sub licenses the company enters into.

    (b) <u>Patent Marking</u>. Licensee shall mark all Licensed Products with "U.S. Patent No. 7,319,378". Licensee shall also identify the Licensed Patent in any marketing literature.

Pltf. Compl. - EX. A

3. **License Fee and Royalties**

   (a) <u>License Fee</u>. In consideration for granting this patent license, Licensee shall pay Licensors a License Fee in the amount of ten thousand U.S. dollars ($10,000), with such payment to be made within ten (10) business days of the date of the last signature on this Agreement. The License Fee shall be non-refundable.

   (b) <u>Royalties</u>. Licensee shall pay Licensors a royalty of five percent (5%) of the Gross Profit on Licensed Products. No royalties shall be due on Licensed Products manufactured and used for development, testing, marketing, demonstrations, and other non-revenue purposes or uses. No royalties shall be due on any Licensed Products sold after expiration, cancellation or abandonment of the Licensed Patent.

   (c) <u>Minimum Royalties</u>. No minimum royalties are due under this license.

   (d) <u>Payment</u>. Payments of royalties shall be made quarterly within forty-five (45) days after the end of each calendar quarter in which royalties are due under this Agreement. All royalty payments due Licensors shall be made in United States dollars by bank-to-bank transfer to such bank account as Licensors may designate in writing from time to time.

   (e) <u>Records and Audit Rights</u>. Licensee shall keep complete and accurate records of the latest five (5) years of sales of Licensed Products to which royalties attach hereunder. For the sole purpose of verifying royalties due Licensors, Licensors shall have the right annually at Licensors' expense to retain an independent certified public accountant selected by Licensors and reasonably acceptable to Licensee to review and make copies of such records in the location(s) where such records are maintained by Licensee upon reasonable notice and during regular business hours, with all information disclosed being deemed Confidential Information hereunder. Results of such review shall be made available to both Licensors and Licensee. If the review reflects an underpayment of royalties due Licensors, such underpayment shall be promptly remitted to Licensors by Licensee. If the underpayment is equal to or greater than three percent (10%) of the royalty amount that was otherwise due, Licensors shall be entitled to have Licensee pay all of the reasonable costs of such review incurred by Licensor.

   (f) <u>Licensors Responsible for Sharing of Royalties</u>. Licensors agree that Licensors shall be responsible to themselves for sharing royalty payments and that Licensee shall have no obligations to any one of the patent owners individually and separate from the obligation to pay royalties to Licensors collectively in the bank account designated by Licensors. Each of Licensors individually agree by signing this Agreement that payment of royalty payments made by Licensee to the bank account designated by Licensors will satisfy any and all claims to such royalties by any one of the patent owners individually.

4. **Maintenance and Enforcement of the Licensed Patent.**

   (a) <u>Licensors Responsible for Maintenance Fees</u>. During the Term of this Agreement, Licensors shall be solely responsible, and shall bear all expenses incurred for maintaining the Licensed Patent.

   (b) <u>Enforcement.</u> During the Term of this Agreement, Licensee shall inform Licensors promptly in writing of any alleged infringement by anyone of the Licensed Patent and shall provide any evidence indicating such infringement. Licensors shall have the exclusive right but not the obligation to prosecute all infringements of the Licensed Patent at their own expense, in which case Licensee shall, at Licensors' reasonable request, assist and cooperate with Licensors in any such litigation, and Licensors shall retain, and Licensee shall have no claim to, any damages received from such litigation related the Licensed Patent. If Licensors elect not to prosecute an identified infringer, then Licensee shall have the

right to prosecute such infringer at Licensee's expense, in which case Licensors shall, at Licensee's reasonable request, assist and cooperate with Licensee in litigation, and Licensee shall retain, and Licensors shall have no claim to, any damages received from such litigation related the Licensed Patent.

5. **Confidentiality.**

(a) Scope. "Proprietary Information" means any non-public information that belongs to the Parties business including, but not limited to information concerning the business, operations and assets of each Party, and its parent, subsidiaries and affiliates and the directors, members, shareholders, partners, officers, employees, agents, representatives, subcontractors and suppliers, including, without limitation, the terms and conditions of this Agreement or any related agreement, know how, technology, software, hardware, code, data bases, technical data, proprietary processes, formulations, customer lists; patents, inventions (whether patentable or not), invention disclosures, Improvements and designs, products, systems, business plans, product plans, costs, prices, specifications, techniques, and other information of a similar nature, whether or not reduced to writing or other tangible form, and any other trade secrets, including, without limitation, information protected under The Defend Trade Secrets Act of 2016 of the United States.

(b) Protections of Proprietary Information. During or subsequent to the Term, no Party will use the other Party's Proprietary Information for any purpose whatsoever other than the performance of its obligations or exercise of its rights under this Agreement, or disclose the Proprietary Information to any third party. The Parties further agree to take all reasonable precautions to prevent any unauthorized disclosure of Proprietary Information including, but not limited to having employees and subcontractors, if any, with access to any Proprietary Information, execute a nondisclosure agreement containing provisions in the other Party's favor no less stringent than the confidentiality provisions of this Agreement.

(c) Exceptions. Proprietary Information does not include information that: (i) is disclosed in a Licensed Patent or published application; (ii) is known to a Party prior to the time of receipt, as evidenced by written records predating such receipt; (iii) is or becomes publicly known and made generally available through no improper action or inaction by a Party or any agent or affiliate of the Party; (iv) is independently developed by a Party without use of or reference to the Proprietary Information, as evidenced by contemporaneous written records; or (v) has been rightfully received by a Party from a third party who is authorized to make such disclosure without restriction or any requirement of confidentiality.

(d) Required Disclosure. Nothing in this Agreement will prevent a Party from disclosing Proprietary Information to the extent Licensee is legally compelled to do so by any legal requirement, including any governmental investigative or judicial agency pursuant to proceedings over which such agency has jurisdiction; provided, however, that prior to any such disclosure, a Party shall: (i) assert the confidential nature of the Proprietary Information; (ii) immediately notify the other Party in writing of the agency's release or request to disclose; and (iii) provide reasonable assistance to the other Party of efforts to protect against any such disclosure and/or obtain a protective order to narrow the scope of the compelled disclosure to the extent necessary to comply with such requirement.

(e) Return or Destruction. Upon the termination or expiration of this Agreement, or upon either Party's earlier request, each Party will deliver to the other Party (and will not recreate or deliver to anyone else) all of the Proprietary Information (inclusive of any physical embodiments inclusive or derived from such Proprietary Information that the Party or any third-party may have in their respective possession or control; or upon a Party's request, the other Party will destroy all Proprietary Information in its possession, including all copies, tangible or otherwise, and confirm in writing that it has complied with the obligations set forth in this paragraph. However, this provision will not apply to any Proprietary Information (i) not easily removed from computer storage under disaster recovery systems or other

automated information technology processes which Licensee performs in the ordinary course of business and (ii) not easily accessible by any person in the ordinary course of business. Compliance with this Section 5(e) shall not relieve either Party in respect of a breach of any other provision of this Agreement.

6. **Term and Termination.**

(a) Term. Unless earlier terminated in accordance with the terms of this Agreement, and subject to Licensee making all royalty payments due hereunder with respect to any Licensed Product, the term of this Agreement shall continue from the Effective Date so long as the Licensed Patent remains valid and enforceable, and terminate upon the expiration of the Licensed Patent (the "Term").

(b) Termination by Licensee. Licensee may terminate this Agreement upon written notice at any time for any reason. In the event of termination by Licensee, any royalties not already paid on Licensed Products shall be due and payable to Licensors, and this Agreement shall terminate upon Licensee delivering to Licensors such royalty payment or a statement that no Licensed Products have been sold since the Effective Date or since the last payment of royalties.

(c) Termination by Either Party. Either Party may terminate this Agreement: (i) in the event of a default by the other Party of any material obligation in this Agreement, effective thirty (30) days after written notice of such default is received by the Party in default and provided that the Party in default has not remedied the default during such thirty (30) day notice period to the non-breaching Party's reasonable satisfaction; and (ii) immediately upon written notice if the other Party ceases to carry on its business or becomes the subject of any proceeding under state or federal law for the relief of debtors or otherwise becomes insolvent, bankrupt or makes an assignment for the benefit of creditors, or upon the appointment of a receiver for the other Party or the reorganization of the other Party for the benefit of creditors.

(d) Survival. No expiration or termination of this Agreement shall affect any rights or liabilities of the Parties which may have accrued prior to the date of expiration or termination. Notwithstanding anything herein to the contrary, upon any expiration or termination of this Agreement, in addition to any provisions that by their terms survive, the provisions of Sections 3, 4(b), 4(c), 5, 6, 7, 8, 9, 10, 11, 12, and 13, shall survive and shall continue in full force and effect in accordance with their terms.

(e) License Rights in Bankruptcy. All rights and licenses granted under or pursuant to any section of this Agreement are, and shall be deemed to be, for purposes of Section 365(n) of the Bankruptcy Code, 11 U.S.C. § 101 et seq., licenses of rights to "intellectual property" as defined under Section 101(35A) of the Bankruptcy Code; and the Licensed Patent licensed to Licensee under this Agreement is and shall be deemed to be "embodiment[s]" of "intellectual property" for purposes of same. Licensee shall retain and may fully exercise all of its rights and elections under the Bankruptcy Code or equivalent legislation in any other jurisdiction. Without limiting the generality of the foregoing, Licensors acknowledges that the rights and license granted to Licensee pursuant to this Agreement shall not be affected by Licensors' rejection of this Agreement in bankruptcy, and shall continue subject to the terms and conditions of this Agreement.

7. **Representations and Warranties**

(a) By Licensors. Licensors represents and warrants that Licensors (i) own and hold, free and clear of all liens or encumbrances of any kind whatsoever, all right, title and interest in the Licensed Patent, (ii) have the exclusive right to license the Licensed Patent, and (iii) have the exclusive right to bring action for the infringement of the Licensed Patent.

(b) <u>Mutual Warranties</u>. Each Party represents and warrants to the other, as of the date hereof, that: (i) it has the power and authority and the legal right to enter into this Agreement and to perform its obligations hereunder; (ii) the individuals executing this Agreement are authorized to do so and to bind the Party to this Agreement and performance of its terms, and (iii) the execution and delivery of this Agreement and the performance of its obligations hereunder do not conflict with or constitute a default under any contractual obligations.

(c) EXCEPT AS EXPRESSLY PROVIDED HEREIN, NEITHER PARTY MAKES ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, AND EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING ALL WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NONINFRINGEMENT.

8. **Indemnification**

(a) Licensors shall defend, indemnify and hold harmless Licensee and its affiliates and their directors, officers, employees and agents ("<u>Licensee Indemnitees</u>") against any claim, charge, demand, proceeding, suit, liability, cost, expense, order, decree, reasonable attorney's fees, court costs, trials or appeal and judgment including damages of any kind ("Losses") resulting from any action or claim filed by any third party to the extent that such Losses arise directly out of the sale or use of the Licensed Patent by Licensors and any other licensee.

(b) Licensee shall defend, indemnify and hold harmless Licensors and its affiliates and their directors, officers, employees and agents ("<u>Licensors Indemnitees</u>") against any Losses resulting from any action or claim filed by any third party to the extent that such Losses arise directly from Licensee's activities or operations, including the sale of Licensed Products, but only to the extent that such Losses are not the direct result of Licensors' breach of Section 7(a), above.

(c) An indemnified Party (an "<u>Indemnitee</u>") shall promptly notify the indemnifying Party (an "<u>Indemnitor</u>") upon notice of any claim in writing and shall reasonably cooperate with Indemnitor to defend any such claim at the Indemnitor's expense. The failure of an Indemnitee to give reasonably prompt notice of any claim shall not release, waive or otherwise affect an Indemnitor's obligations with respect thereto except to the extent of any actual loss and prejudice that the Indemnitor can demonstrate resulted from such failure or delay. The Indemnitor shall select defense counsel and control the defense of the claim; *provided* that Indemnitor must conduct its defense of the claim actively and diligently thereafter in order to preserve its rights in this regard. If an Indemnitor shall assume the defense of any claim, the Indemnitee(s) may participate, at its own expense, in the defense (but will not control the defense) of such claim. If the Indemnitor elects not to defend against, negotiate, settle or otherwise deal with any claim, fails to notify the applicable Indemnitee(s) of its election or contests its obligation to indemnify the Indemnitee(s) under this Agreement, the Indemnitee(s) may, at the Indemnitor's expense, select their own counsel to defend against, negotiate, settle or otherwise deal with such claim. An Indemnitor may not settle any such suit or claim without prior written approval of the applicable the Indemnitee(s), unless such settlement: (i) includes a complete release of all Indemnitee(s); (ii) does not require any Indemnitee to pay any amount or deliver any other consideration; (iii) places no restriction on the future conduct of any Indemnitee; (iv) does not require an admission or finding of fault or liability and (v) includes a confidentiality provision applicable to the terms of such settlement no less restrictive than those contained in this Agreement.

9. **Limitation of Liability**. EXCEPT FOR A DAMAGES ARISING FROM A BREACH BY EITHER PARTY OF ITS CONFIDENTIALITY OBLIGATIONS UNDER SECTION 5, DAMAGES ARISING FROM A PARTY'S INDEMNIFICATION OBLIGATIONS UNDER SECTION 8, UNDER NO CIRCUMSTANCES WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY WITH

**Pltf. Compl. - EX. A**

RESPECT TO ANY BREACH OF THIS AGREEMENT, FOR: ANY INCIDENTAL, PUNITIVE, INDIRECT, EXEMPLARY, EXTRAORDINARY, RELIANCE, OR CONSEQUENTIAL DAMAGES OR LOST PROFITS. THE FOREGOING LIMITATIONS OF LIABILITY WILL APPLY TO THE MAXIMUM EXTENT ALLOWED BY APPLICABLE LAW REGARDLESS OF WHETHER THE LIABLE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND NOTWITHSTANDING THE FAILURE OF ANY REMEDY OF ITS ESSENTIAL PURPOSE. Neither Party shall be liable to the other Party for any loss or damages to the other Party (or any third party) occasioned by the delay in performance or non-performance of any of such Party's obligations when due to any cause beyond such party's reasonable control, including, without limitation, fire, flood, war, embargo, strike, riot, act of God, act or omission of a Party, governmental act, delays in transportation, or an inability to obtain the necessary labor, material, or manufacturing facilities.

10. **Governing Law.**

(a) Agreement shall be governed by the laws of the State of New York without giving effect to the conflict of law principles thereof. The 1980 UN convention on contracts for the International Sale of Goods shall not be applicable to any transaction hereunder.

(b) The Parties acknowledge that any hardware, software, specifications and technical information implementing the Licensed Patent may be subject to United States or other export laws and regulations and any use or transfer of such hardware, software, specifications and technical information must be authorized under those laws and regulations. The Parties agree that they will not use, distribute, transfer, or transmit such hardware, software, specifications or technical information (even if incorporated into other products) to any countries or nationals of any countries except in compliance with such export regulations. Licensee shall be responsible for comply with regulations relating to the export of the hardware, software, specifications or technical information related to the Licensed Products.

11. **Disputes**.

(a)   The Parties agree to attempt in good faith to resolve all disputes arising out of or in connection with this Agreement by negotiation. A Party may provide written notice of the dispute to the other Party, following which each Party shall escalate the dispute to the appropriate senior executive management level (for example, President or Chief Executive Officer) within the parties' organization to resolve such dispute within fifteen (15) days of such escalation. If the dispute is not resolved to the satisfaction of both Parties within thirty (30) days from the date of delivery of the original notice of dispute, either Party may institute formal dispute resolution proceedings.

(b)   For any dispute arising under this Agreement, the Parties hereby irrevocably (i) submit themselves to the exclusive jurisdiction of the State and Federal courts located in the U.S. Southern District of New York, (ii) waive any right to claim inconvenient forum, and (iii) waive any right to a trial by jury. The Court shall award reasonable attorneys' fees and costs associated therewith to the prevailing Party(ies) to the extent determined by the Court to have prevailed.

(c)   Notwithstanding Section 11(a), either Party will at all times have the right to commence proceedings in any other court of its choice with the appropriate jurisdiction for interim injunctive relief in respect of any breach or threatened breach of Section 5 of this Agreement. Each Party will comply with all laws, statutes, rules and regulations applicable to it. Each Party agrees that it would be impossible or inadequate to measure and calculate the other Party's damages from any breach of Section 5 of this Agreement. Accordingly, each Party agrees that if such Party breaches such provisions, the other Party will have available, in addition to any other right or remedy available, the right to seek from any court of competent jurisdiction an injunction restraining such breach or threatened breach and to seek specific performance of any such provision.

**Pltf. Compl. - EX. A**

12. **Notice.** All notices, approvals, requests or demands ("Notices") which any Party is required or may desire to give to the other hereunder shall be in writing, unless otherwise specified, and shall deemed to have been received (i) immediately upon delivery to the address set forth below; (ii) three (3) days from the date by mailed, registered or certified, postage prepaid to the address set forth below; or (iii) upon confirmation of transmittal by any electronic means whether now known or hereafter developed, including but not limited to email to the email address specified below:

If to Licensors:  Markeith Boyd

  _[signature]_

  Email: markeithboyd@gmail.com

If to Licensee:  Griffen Security LLC

  _[signature]_

  Attn: Gavin Wilding
  Email: gavin@grifflock.com

A Party may change its designated notice information by providing written notice of such change to the other Party.

13. **General Provisions**

(a) **Amendment, No Waiver.** This Agreement may not be modified, amended or waived in any manner except by a written instrument signed by both Parties hereto. The waiver by either Party of compliance with any provision of this Agreement by the other Party shall not operate or be construed as a waiver of any other provisions of this Agreement, or of any subsequent breach by such other Party of any such provision.

(b) **Assignment/Successors.** Licensee shall not assign or subcontract any right or interest under this Agreement (excepting solely for moneys due or to become due) without the prior written consent of Licensors, acting in their sole discretion. Licensors may, at their sole discretion, assign or subcontract any or all of its rights and obligations in this Agreement without Licensee's consent, except that any assignment or subcontract of payment obligations must be approved in writing by Licensors, acting reasonably and in good faith. Without limiting the preceding two (2) sentences, this Agreement shall inure to the benefit of and be binding upon the Parties hereto and their successors in interest and permitted assigns.

(c) **Partial Invalidity.** Whenever possible, each provision of this Agreement will be interpreted in such a way as to be effective and valid under applicable law. If any provision or any part thereof contained in this Agreement is, for any reason, held to be invalid or unenforceable in any respect under the laws of any jurisdiction where enforcement is sought, such provision shall be fully severable and such invalidity or unenforceability shall not affect any other provision of this Agreement and this Agreement shall be construed (i) as if such invalid or unenforceable provision or part thereof had been effectively modified to the extent necessary to avoid the illegality or unenforceability of such provision, if possible, and if not, then (ii) as if such invalid or unenforceable provision or part thereof had not been contained herein.

(d) **Entire Agreement.** This Agreement constitutes the complete and exclusive statement of the agreement of the Parties with respect to the subject matter of this Agreement, and replaces and supersedes all prior agreements and negotiations between the Parties, including the Confidentiality and

**Pltf. Compl. - EX. A**

Exclusivity Agreement between the Parties. Each Party acknowledges and agrees that no agreements, representations, warranties or collateral promises or inducements have been made by any Party except as expressly set forth herein, and that it has not relied upon any other agreement or document, or any verbal statement or act in executing this Agreement. These acknowledgments and agreements are contractual and not mere recitals.

(e)   Interpretation. The Parties hereto acknowledge and agree that (i) each Party has had the opportunity to review this Agreement with counsel, has revised and negotiated the terms and provisions of this Agreement and has contributed to its revision; (ii) the rule of construction to the effect that any ambiguities are resolved against the drafting Party shall not be employed in the interpretation of this Agreement; and (iii) the terms and provisions of this Agreement shall be construed fairly as to all Parties hereto and not in favor of or against any Party, regardless of which Party was generally responsible for the preparation of this Agreement.

(f)   Headings. The headings of sections and paragraphs herein are included solely for convenience of reference and shall not control the meaning or interpretation of any of the provisions of this Agreement.

(g)   Counterparts. This Agreement, and any amendment, supplement, restatement or termination of any provision hereof may be signed, executed and delivered by manual or facsimile signature in several counterparts of like form, each of which when so executed and delivered shall be deemed to be an original and such counterparts together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date indicated below, the last date being the Effective Date of this Agreement.

**LICENSORS:**

By: _Bobbie Thompson_   Date: _5/7/18_
Name: Bobbie Thompson

By: _[signature]_   Date: _5/10/2018_
Name: Markeith Boyd

By: _Shirly L Boyd_   Date: _5-10-2018_
Name: Shirley Lorraine Boyd

**GRIFFEN SECURITY LLC**

By: _Gan Wilding_   Date: _5/25/2018_
Name: Gavin Wilding
Title: President & CEO